**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA,**

**v.**                                                    **Case No. 3:07cr135/RV/CJK**

**GEORGE ARMAN SALMORAN-CALDERON,**
    **Defendant**.

---

## REPORT AND RECOMMENDATION

This matter is before the court upon defendant's motion to vacate, set aside, or correct sentence (doc. 189), filed pursuant to 28 U.S.C. § 2255. The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and NORTHERN DISTRICT OF FLORIDA LOCAL RULE 72.2(B). Having conducted a careful review of the record and the arguments presented, the undersigned concludes that the motion should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

The defendant, George Arman Salmoran-Calderon, and co-defendants Armando Cardon-Cortez, Jorge Gomez-Montes, and Amber J. Girard, were charged with conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), five kilograms or more of a mixture and substance containing a detectable amount of cocaine and fifty grams or more of a mixture and substance containing a detectable amount of methamphetamine (Count I), in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii), 841(b)(1)(B)(viii), and 846. (Doc. 25, pp. 1-2). Defendant and two coconspirators were also charged with possession with intent to

distribute a controlled substance on or about November 4, 2007, in violation of 21 U.S.C. § 841(a)(1), and that this offense involved a mixture and substance containing a detectable amount of cocaine and a mixture and substance containing a detectable amount of methamphetamine (Count II), in violation of 21 U.S.C. § 841(b)(1)(c) and 18 U.S.C. § 2. (Doc. 25, p. 2). Defendant and two coconspirators were further charged with possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1), 500 grams or more of a mixture and substance containing a detectable amount of cocaine and 50 grams of methamphetamine (Count IV), in violation of 21 U.S.C. §§ 841(b)(1)(B)(ii) and (b)(1)(B)(viii). (Document 25, pp. 3-4).

On February 15, 2008, a jury convicted the defendant as charged of the above counts. (Document 87, pp. 1-2). The District Court sentenced the defendant to 189 months for counts I, II, and IV, sentences to run concurrently. (Document 123, pp. 2-3).

Facts underlying this claim show that on November 4, 2007, Okaloosa County Sheriff's Office ("OCSO") Deputy Frederick Young arrived at the Wingate Inn to assist hotel management in an eviction of several tenants.[1] (PSR ¶ 11). Upon arrival, the hotel night manager explained to the officer that the occupants of hotel rooms 235 and 237 owed in excess of $200.00 on a phone bill and that he suspected drug activity within the rooms. (PSR ¶ 11). Around this time, OCSO Sheriff's Deputy Tim Patterson arrived on scene accompanied by his trained narcotics canine, Flash. (PSR ¶ 12). Deputy Patterson walked the hallways of the hotel until Flash alerted to an odor emanating from room 237. (PSR ¶ 12). The tenants of rooms 235 and 237 were

---

[1] References to the Presentence Investigation Report will be by "PSR" followed by the paragraph number.

identified as Amber Girard, Armando Cardon-Cortez (a/k/a "Vatto"), Jorge Gomez-Montes (a/k/a "Raphael Hernandez"), and the defendant, George Arman Salmoran-Calderon (a/k/a "Francisco Corboso," a/k/a "Casper").  Upon inspection of room 237, Deputy Young noticed a box of baking soda and soon discovered a table spoon with a white powdery residue on the top and a burnt residue on the base.  (PSR ¶ 13).

Deputy Young confronted Girard with this information and she admitted to having a drug problem and that she owned the drug paraphernalia in question.  (PSR ¶ 14).  Shortly thereafter, Girard was placed under arrest and told Deputy Young that a large amount of cocaine and money was stored in the safe located in Wingate Inn room 237.  (PSR ¶ 16).  Girard later detailed the extensive cocaine and methamphetamine operation of Armando Cardon-Cortez in the Northern District of Florida.  (PSR ¶ 17).  According to Girard, Cardon-Cortez utilized Jorge Gomez-Montes and the defendant to "run" and deliver his drugs to certain individuals.  (PSR ¶ 17).  Girard stated to law enforcement that she had observed Cardon-Cortez in possession of three kilograms of cocaine on November 3 and 4, 2007.  (PSR ¶ 17).  On November 5, 2007, acting on information given to them by Girard, law enforcement officials stopped a gold Pontiac minivan driven by Cardon-Cortez; Gomez-Montes was sitting in the passenger seat.  (PSR ¶ 20).  A subsequent search of the vehicle revealed traces of cocaine powder.  (PSR ¶ 20).  Upon arrest, Gomez-Montes identified Cardon-Cortez as his boss and admitted to selling drugs for him.  (PSR ¶ 20).

Law enforcement officials next investigated Gomez-Montes's residence located at 200 White Street, Unit 22, Niceville, Florida.  (PSR ¶ 22).  Here, officials spoke with Shannon Rae Reed, who identified Cardon-Cortez.  (PSR ¶ 22).  The defendant

was also present in the apartment and admitted to renting a room in the unit to Cardon-Cortez. (PSR ¶ 22). Police canines alerted officials to the possible presence of drugs in Cardon-Cortez's room, resulting in the police acquiring a search warrant thereafter. (PSR ¶ 22). A search of the bedroom revealed several kilograms of cocaine powder, multiple grams of methamphetamine, $240,000.00 in U.S. currency, money transfer receipts, and two handguns. (PSR ¶ 22). Girard's incriminating statements regarding the defendant's involvement with Cardon-Cortez's drug operation, the arrest of Cardon-Cortez and Gomez-Montes in a car that was found to have cocaine in it, and the discovery of large amounts of drugs and money in a locked room at defendant's residence, all led law enforcement officials to arrest the defendant. (PSR ¶ 22).

On November 27, 2007, law enforcement officials interviewed Girard and she identified pictures of her fellow coconspirators, including the defendant. (PSR ¶ 23). Girard further detailed that she frequently purchased cocaine from Cardon-Cortez. (PSR ¶ 22). Girard stated that she had participated in an attempted drug deal with the defendant and Gomez-Montes. (PSR ¶ 24). Girard stated that she picked up a briefcase she believed contained one kilogram of cocaine. She then drove both the defendant and Gomez-Montes to her friend, identified as "Nick the Greek." (PSR ¶ 24). Both the defendant and Gomez-Montes were carrying firearms. They then entered Nick the Greek's residence carrying the briefcase. (PSR ¶ 24). The deal fell through, however, so Girard drove both men back and dropped them off. (PSR ¶ 24).

These facts led to defendant's convictions.

## DEFENDANT'S CLAIMS

Pursuant to 28 U.S.C. § 2255, defendant timely filed the instant motion to

vacate, set aside, or correct sentence (doc. 189), asserting nine grounds on which he believes he is being held in violation of the Constitution, laws, or treaties of the United States. Defendant contends trial counsel rendered ineffective assistance by (1) failing to file an appeal and failing to assist him in the appellate process; (2) failing to inform the court that the defendant is unable to read or write English; (3) failing to request an "understandable" interpreter for the trial proceedings; (4) failing to move to dismiss Counts I, II, and IV; (5) failing to object to improper jury instructions; (6) failing to object to claimed prosecutorial misconduct that occurred during the trial; (7) failing to challenge the indictment and verdict forms as fatally defective; (8) failing to investigate the evidence, question defense witnesses, and question prosecution witnesses, prior to trial, and failing to cross-examine the government witnesses regarding their agreement with the government; and (9) failing to object to purportedly prejudicial evidence admitted at trial. (Doc. 189, pp. 4-5, 13-14, 19, 22).

## ANALYSIS

As a preliminary matter, the court notes certain general rules applicable in section 2255 proceedings following direct appeals, as well as the distinction between review under section 2255 and direct appeal. "Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding." *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." *Id.* "A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his

claims on direct appeal." *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001). "Further, a § 2255 movant cannot argue as the causal basis for his failure to advance an argument on direct appeal that the argument only became known to the movant due to subsequent developments in the law." *Castro v. United States*, 248 F. Supp. 2d 1170, 1174 (S.D. Fla. 2003) (citing *McCoy*, 266 F.3d at 1258).

Regarding the important difference between a § 2255 collateral challenge and direct review, "[i]t has long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *See United States v. Addonizio*, 442 U.S. 178, 184 (1979). Relief should be granted only if the challenged sentence resulted from "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *See Hill v. United States*, 368 U.S. 424, 428 (1962); *see also Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) ("Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'" (quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981))).

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, the defendant must show that counsel's performance was deficient[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Second, the defendant must show that the deficient performance prejudiced the defense[,]" which "requires showing that

counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In applying *Strickland*, the court may dispose of an ineffective assistance of counsel claim if the defendant fails to carry his burden on either of the two prongs. *See* 466 U.S. at 697.

*Counsel's Failure to Assist the Defendant in the Appellate Process*

Defendant first claims that his lawyer failed to educate him about the appellate process and as a result he we unable to raise any constitutional challenges to the trial court's errors. This alleged error of counsel focuses mainly on defense counsel's failure to communicate to the Eleventh Circuit Court of Appeals his client's deficiencies in reading and writing the English language. The defendant alleges further that this omission left defendant unable to file the needed briefs and raise the issues pertinent to his conviction. Finally, the defendant alleges that defense counsel failed to assist or explain to the defendant the appeals process for his conviction.

Defendant claims hardship based upon his inability to read or write English, and further posits that defense counsel failed to inform the Eleventh Circuit of his client's limitations. The Eleventh Circuit conducted an independent review of the entire record and confirmed that there were "no issues of arguable merit on appeal." *United States v. Cardon-Cortez*, 322 F. App'x 659, 660 (11th Cir. 2009). Even a cursory glance at the record makes clear that an interpreter was used throughout the proceedings, indicating to the reviewing court that the defendant had difficulty with English. (Doc. 22, p. 1). Defendant has offered no evidence whatsoever to further this claim that the Eleventh Circuit was not aware of his English literacy deficiencies. The evidence in the record confirms just the opposite.

Furthermore, the defendant filed *pro se* an extension of time to file a response

to counsel's motion to withdraw and a response to counsel's motion to withdraw. (Doc. 265; Doc.195-2, p. 8). Examination of these documents evidences that the defendant did inform the appellate court of his linguistic limitations. (Doc. 265, p. 2). Further, defendant's documents show that he was able to communicate with the Eleventh Circuit and make coherent arguments advancing his position in response to defense counsel's *Anders* brief. (Doc. 265). Upon review of the correspondence between the defendant and the Eleventh Circuit, this Court notes that defendant communicated to the Eleventh Circuit in his request for an extension of time (doc. 265-1), that he would put forward arguments that would show his appeal had merit. In his later pleading titled "Objection to Counsel's Motion to Withdraw" (doc. 265), defendant failed to put forward any information that would demonstrate his appeal had merit. Instead, defendant merely alleged wrongdoing and bad faith on the part of defense counsel, and detailed his limitations regarding the English language. (Doc. 265, p. 2). These were the only two communications that defendant had *pro se* with the Eleventh Circuit. (Doc. 195-2). The fact that defendant was unable to put forward any plausible argument to show that his appeal had merit after stating that he would, bolsters defense counsel's action in submitting an *Anders* brief. These documents also show that the defendant could coherently and understandably communicate with the Eleventh Circuit, and was able to convey his language difficulties to the court.

Finally, the defendant fails to identify any evidence that shows that defense counsel failed to discuss defendant's appeal with him, or that counsel neglected to raise any pertinent legal issues. In fact, the record reflects the opposite. Defense counsel discussed defendant's case and the possibility of an appeal with him, as

reflected in a sworn response to the defendant's "Objection to Counsels Motion to Withdraw," that:

> At the time of the sentencing, the Defendant indicated that he wanted to file an appeal. [Defense counsel] explained there would be no further fact finding and that everything would be based upon the record. The Defendant left the conversation giving the undersigned attorney the opinion that he felt another trial would be granted.

(Doc. 195-5, p. 1).

Furthermore, the record shows that defense counsel sought to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). (Doc. 195-5, p.1). The *Anders* brief was submitted because "[a]fter reviewing the transcripts of the trial and other proceedings the [defense counsel] reached the conclusion that there is no basis for an appeal." (Doc. 195-5, p. 1). Defense counsel is under no obligation to pursue a claim that lacks merit. *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (holding that "[c]ounsel was not ineffective for failing to raise these issues because they clearly lack merit"); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) ("[C]ounsel need not pursue constitutional claims which he reasonably believes to be of questionable merit."). Similarly, appellate counsel is likewise insulated from an obligation to pursue meritless claims on appeal. *See Owen v. Sec'y, Fla. Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009) (holding "any deficiencies of [appellate] counsel in failing to raise or adequately pursue [substantive issues lacking merit] cannot constitute ineffective assistance"); *Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1311 (11th Cir. 2008) (agreeing that "appellate counsel is not ineffective for failing to raise a meritless issue on appeal"). It is particularly noteworthy that counsel for each codefendant in these cases submitted an *Anders* brief and moved to withdraw from representation of his client. (Doc. 180, p. 3). The Eleventh Circuit

granted counsels' motions and affirmed the convictions of the defendant and his coconspirators, finding no meritorious grounds for appeal. *Cardon-Cortez*, 322 F. App'x at 659-60.

In addressing section 2255 motions for ineffective assistance of counsel, the movant must demonstrate that the attorney's representation fell "below an objective standard of reasonableness." *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). Here, defendant fails to put forward any evidence showing that his attorney's conduct fell below that standard and that no other reasonable attorney would have acted in the way defendant's counsel did. *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) ("Because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."). The attorney's actions were also affirmed by the Eleventh Circuit. Additionally, the record plainly contradicts many of his assertion regarding his appellate hardships. Further, defendant's assertion of appellate difficulties is vague and unsupported by factual backing. The law is clear that "'[c]onclusory allegations of ineffective assistance are insufficient.'" *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). Refuted by the evidence of record and without support, the allegation of appellate hardships due to ineffective assistance must fail. *See id.*

*Counsel's Alleged Failure to Inform the Court of Defendant's Language Difficulties*

Defendant's contention in ground two is scarcely distinguishable from his claims in ground one. Here, defendant argues that defense counsel provided ineffective assistance by failing to inform the Eleventh Circuit of defendant's

difficulties with the English language. Defendant makes several claims stemming from this supposed failure of his attorney.

Defense counsel, as noted in the prior point, properly filed an *Anders* brief. *Cardon-Cortez*, 322 F. App'x at 659-60. The Eleventh Circuit's independent review found no ground for appeal, and therefore granted all three defense counsels' motions for withdrawal. *Id*. The defendant also filed in the Eleventh Circuit an Objection to Counsel's Motion to Withdraw, in which he informed the court that he spoke very little English. (Doc. 265, p. 2). The Eleventh Circuit, upon review of the record and defendant's pleadings, would have easily discerned the defendant's claimed linguistic difficulties.

Defendant's remaining contentions in his second ground fail upon closer inspection. Defendant claims that the time limits placed upon him gave him no opportunity to seek assistance from a jailhouse lawyer. (Doc. 189, p. 4). The defendant filed a notice of appeal on June 4, 2008, (doc. 136), and decision did not issue until March 27, 2009. (Doc. 180, p. 3). Defendant fails to explain how such a time frame left him unable to seek jailhouse lawyer assistance and notably fails to put forward a specific instance of prejudice due to his inability to read or write English.

These facts strike at the heart of an ineffective assistance of counsel claim, both as to deficient performance and prejudice. *Strickland*, 466 U.S. at 487. Here, the defendant merely repeats the same conclusory accusations from ground one that are contradicted by both the record in the case and his own conduct. The law is clear that conclusory assertions of ineffective assistance do not amount to a cause of action under a § 2255 motion. *See Wilson*, 962 F.2d at 998. Defendant has shown neither that defense counsel's conduct was deficient, nor that the deficiency resulted in

prejudice so serious as to deprive him of a fair trial and legitimate verdict. *See Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." ). Unsupported by any specific allegations, defendant's generic assertions of misconduct are undercut by the record and therefore must fail.

*Counsel's Failure to Request An "Understandable" Interpreter*

In ground three, defendant alleges that the trial court's interpreter "was not fully comprehendable [sic] as the interpretor [sic] spoke too fast[,]" and his counsel erred by refusing to "address the issue to the court to find an alternative aid in translating English to Spanish . . . ." (Doc. 189, p. 4). In a sworn affidavit, counsel refuted defendant's contentions: "[Defense Counsel] was well aware that Defendant was not proficient in English . . . . [T]here may have been one meeting at which affiant realized the language barrier required an interpreter for meaningful exchanges to occur." (Doc. 195-1, p. 1). Independent review of the record confirms counsel's assertions. Once defense counsel realized meaningful exchanges were hindered by the language barrier, he made arrangements for an interpreter, Magali Solimano, to attend future meetings. Henceforth, Ms. Solimano helped explain the court proceedings, as well as the plea, trial, and appeals processes to the defendant. (Doc. 195-1, p. 2). Defense counsel also states that defendant never complained to him that the interpreter was speaking too rapidly. (Doc. 195-1, p. 3). Furthermore, when defendant's headset malfunctioned during trial, defense counsel immediately brought this to the attention of the court. (Doc. 161, p. 65). The record confirms that if a

witness trailed off or was difficult to understand through the interpreters, counsel for codefendants alerted the trial judge who instructed the witness, "Ms. Girard, you have to talk a little slower and louder because we're having to talk and they're having to listen over the interpreters, which is difficult. So speak a little louder, please." (Doc. 160, p. 24).

The defendant also claims that had defense counsel made the court aware of the claimed language difficulties, defendant would have waived his Fifth Amendment protections and testified. (Doc. 189, p. 9). The record refutes this assertion and at the same time affirms counsel attempted to ensure defendant was able to understand the proceedings and the significance of his decision to remain silent.

> [Defense Counsel]: Judge, there's communication problems, as I'm sure you're aware, and I know frequently, you will ask the defendants whether or not they understand their right to testify.
> The Court: Yes.
> [Defense Counsel]: Could we do that colloquy?
> The Court: That's what I intend to do right now. We'll start with your client, [Defense Counsel].
> [Defense Counsel]: All right. Judge, my client and I have discussed whether or not he's going to testify, and we've kind of bounced back and forth, and I've explained to him that it's his absolute right either not to testify or to testify. And I've evaluated the case and what he's told me, and I have made a recommendation to him. The last time we spoke, he was not going to testify, and now I'm not sure where we are going.
> The Court: [Speaking to defendant] Your attorney cannot make the decision the decision for you. You must make the decision. What is your decision? Are you going to testify or not?
> [Defendant]: No, sir.

(Doc. 161, pp. 164-65). Defense counsel made an affirmative effort to ensure that the defendant was aware of his rights and to ensure that he understood those rights.

Further weakening defendant's claim in this instance is the complete lack of

specifics offered to support it. Defendant fails to point to any instance in the record where he complained about the court-appointed interpreter. *See Valladares v. United States*, 871 F.2d 1564, 1566 (11th Cir. 1989) (holding that in the context of a section 2255 motion, when the appellant makes no objection to the adequacy of an interpreter at trial, the court will consider the lack of objection as a factor weighing against a finding of abuse of discretion by the trial court). "To allow a defendant to remain silent through the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse." *Id*. Furthermore, defendant fails to identify an instance where counsel ignored defendant's complaints about the interpreter. The record betrays no indication that defendant experienced difficulty comprehending the interpreter. Additionally, defendant's claim is rife with bare speculation. Defendant claims had he been able to understand the interpreter and hence understand what was going on in his trial, he would have requested to testify. (Doc. 189, p. 9). Defendant, however, fails to suggest what he would have said had he testified or how that would have affected the outcome of his trial.

As such, the defendant cannot show any resulting prejudice from counsel's actions or omissions, and consequently, cannot illustrate how the outcome of his trial would have been different had absent the alleged errors. *See Strickland*, 466 U.S. at 693, 694 (subjecting defendant claiming ineffective assistance to "a general requirement that [he] affirmatively prove prejudice," or "a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different"). The record plainly shows that counsel took affirmative steps to make the proceedings understandable to the defendant. Defense counsel was fully aware of defendant's language deficiencies, and counsel attempted to remedy such

deficiencies at various stages of the proceedings. Finally, defendant's other allegations under this ground are wholly unsupported by the record. "'[C]onclusory allegations of ineffective assistance are insufficient.'" *Wilson*, 962 F.2d at 998 (*quoting United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). In sum, defendant's claims in ground three lack merit. Such claims are either completely unfounded or contradicted by the record and must therefore fail.

*Counsel's Failure To Move For Dismissal of Counts I, II, and IV*

Defendant next alleges ineffective assistance of counsel because defense counsel failed to move for dismissal of counts one, two, and four, based on the insufficiency of the evidence. (Doc. 189, p. 5). Contrary to defendant's assertion, the record shows that defense counsel did move for dismissal of counts one, two, and four, and that defense counsel moved for dismissal on the very grounds alleged by defendant. (Doc. 161, p. 162).

As to count one, defense counsel moved for dismissal of the methamphetamine charge and argued that the defendant had no involvement with the dealing of methamphetamine in the course of the conspiracy.[2] (Doc. 161, p. 162). Defense counsel further argued that the weight of the cocaine attributed to the defendant was wrong and was in reality lower, for sentencing purposes, than what the prosecution had alleged. (Doc. 161, p. 162-163). Additionally, defense counsel moved for dismissal of count two – stemming from the drugs in the hotel room – arguing that the defendant did not have possession of the drugs, had no knowledge that such drugs were in the room, and that he had no involvement with those specific drugs. (Doc.

---

[2] Count one contains the charges of conspiracy to deal methamphetamine and conspiracy to deal cocaine. Defendant contends that counsel should have moved to dismiss count one in its entirety. Counsel only moved to dismiss the conspiracy to distribute methamphetamine charge.

161, p. 163). Defense counsel further argued that a witness, Shannon Reed, testified that she and the defendant only went to the hotel because it was too far to drive home that night and they needed a place to sleep. (Doc. 161, p. 162). Finally, defense counsel moved to dismiss count four, claiming that the defendant did not have possession and control over the drugs and money in the locked room in the apartment where he resided. (Doc. 161, p. 163-164). The court denied the motion, finding as to each count there was sufficient evidence to permit the jury to find the defendant guilty on the counts at issue and that the quantity of cocaine charged was appropriate. (Doc. 161, p. 162).

In addition to the foregoing facts as to counsel's performance, an examination of the evidence provides further reasons that defendant's fourth claim should fail. "To support [defendant's] conviction for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, the government must prove beyond a reasonable doubt that: (1) a conspiracy existed; (2) [defendant] knew of the essential objectives of the conspiracy; and (3) [defendant] knowingly and voluntarily participated in the conspiracy." *United States v. Harris*, 20 F.3d 445, 452 (11th Cir. 1994) (*citing United States v. Andrews*, 953 F.2d 1312, 1318 (11th Cir. 1992)), *holding modified by United States v. Toler*, 144 F.3d 1423 (11th Cir. 1998). Regarding defendant's knowledge and voluntary participation, "'the government must prove beyond a reasonable doubt that [defendant] had a deliberate, knowing, and specific intent to join the conspiracy." *Id*. (*quoting United States v. Jenkins*, 779 F.2d 606, 609 (11th Cir. 1986). The jury is not constrained to purely direct evidence of the defendant's conduct in deciding participation in the conspiracy, but instead is "free to infer participation in the conspiracy from the defendant's actions or from circumstantial

evidence of the scheme." *Id.* (*quoting United States v. Cross*, 928 F.2d 1030 (11th Cir. 1991)); *see also United States v. Westry*, 524 F.3d 1198, 1212 (11th Cir. 2008) ("[B]ecause a conspiracy is 'predominantly mental in composition,' circumstantial evidence is frequently resorted to in order to prove its elements.") (*quoting Toler*, 144 F.3d at 1426); *United States v. Figueroa*, 720 F.2d 1239, 1246 (11th Cir. 1983) ("A conspiracy conviction will be upheld ... when the circumstances surrounding a person's presence at the scene of conspiratorial activity are so obvious that knowledge of its character can fairly be attributed to him."). Participation in a conspiracy leaves all conspirators liable for the offenses of a coconspirator. *See* 21 U.S.C. § 846.

In the instant case, evidence abounds in the record from which the jury could properly discern defendant's involvement in a conspiracy. Amber Girard, a member of the conspiracy, testified that Cardon-Cortez utilized the defendant as a "runner" for his drug operation, directing him to deliver drugs to certain individuals. (PSR ¶ 38) Girard testified that she had met and received drugs from him on various occasions. (Doc. 160, p. 23). Girard also detailed her participation with the defendant in a drug deal in which the defendant attempted to sell a kilogram of cocaine to one of her friends, "Nick the Greek." (Doc. 160, pp. 27-29). Another witness, Shannon Reed, testified that she had bought cocaine from the defendant. (Doc. 161, p. 9). Additionally, Reed, testified that the defendant was involved in receiving and distributing cocaine and methamphetamine. (Doc. 161, pp. 12, 24). Separate from this testimony, police conducted a search of the defendant's residence located at 200 White Street, Unit 22, and seized kilograms of cocaine powder, grams of methamphetamine, marijuana, cash of around $247,000.00, and two handguns.

(PSR ¶ 22). In the search of the Wingate Inn hotel room occupied by the defendant, Girard, Reed, and Cardon-Cortez, the government seized 252 grams of cocaine and 35 grams of methamphetamine. (PSR ¶¶ 12, 25). In the searches of the gold Chrysler and gold Pontiac van, both driven by Cardon-Cortez, the government seized 334 grams of cocaine powder and 13 grams of methamphetamine. (PSR ¶¶ 27-28).

This evidence presented at trial suffices for a jury to find that the defendant was in a conspiracy to deal drugs and that in many instances the defendant himself actually dealt or attempted to deal drugs with the charged amounts in question. Once the conspiracy charge has been shown, the defendant could be liable for all charges stemming from coconspirators. Furthermore, the above evidence establishes the reasoning behind the alleged quantities that defendant was charged with distributing and later used in his sentencing determination.

Finally, in a 28 U.S.C. § 2255 ineffective assistance analysis, an objective test is utilized in judging the reasonableness of counsel's conduct. *Strickland*, 466 U.S. at 690. "The court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* The above evidence indicates, and Senior District Judge Vinson confirmed, that sufficient evidence was presented to the jury to convict the defendant guilty of the charges. As explained above, defense counsel's professional decision to move for dismissal of the methamphetamine charge of count one, and complete dismissal of counts two and four, was well within "the wide range of professionally competent assistance." *See Id*. Defendant's fourth ground is directly contradicted by the record of the case, the evidence presented at trial, and the reasonableness of defense counsel's conduct in light of that evidence. Therefore, defendant's fourth

claim must fail.

*Failure to Object to the Judge's "Improper Jury Instructions"*

The defendant in his fifth ground claims that Judge Vinson gave improper "instructions" to the jury when he denied jurors the opportunity to take notes during the trial. (Doc. 189, p. 13). The defendant fits this ground within the purview of section 2255 by claiming that defense counsel provided ineffective assistance when he failed to object to the judge's improper instructions. "Allowing jurors to take notes and use them during deliberations is a matter within the discretion of the trial court; absent abuse of discretion, the action of the trial court will not be disturbed." *United States v. Rhodes*, 631 F.2d 43, 45 (5th Cir. 1980), *citing United States v. Pollack*, 433 F.2d 967 (5th Cir. 1970).

The defendant was tried along with two coconspirators. The trial took approximately three days and included evidence from nineteen witnesses. (Docs. 159-161). The jury deliberated approximately three hours and expressed no hesitancy regarding their understanding of the charges in the indictment. (Doc. 161, p. 239). In preliminary instructions to the jury, Judge Vinson stated, "I don't think you're going to need to keep track of any complex set of numbers or facts or evidence or anything like that, nor is it going to be a lengthy trial. So I think you'll pretty well understand what's being said without you taking notes. So, again, I request that you do not [take notes]." (Doc. 159, p. 18).

Defendant underlines a section of the government's opening statement in which Assistant United States Attorney Knight states that "[t]here will be references to these defendants by different names, people knew them -- for example, Mr. Cardon-Cortez

as Vatto . . . . [I]t may be difficult to try to keep it straight." (Doc. 159, p. 29). Defendant believes that this evidence is a "smoking gun" illustrating that the judge erred in his instructions about taking notes. Defendant's belief is incorrect. The statement about difficulty was made by Mr. Knight, not the judge. Mr. Knight's impression of what will be difficult for the jury, simply put, is not determinative for purposes of whether the jury can take notes or not. That decision is in the sole discretion of the judge. Furthermore, the court reads Mr. Knight's statements as simply describing one particular aspect of the case that could potentially confuse the jurors. Mr. Knight did not proclaim the case to be complex or confusing overall, or to be one that justifies juror note taking.

As noted in previous points in this report, counsel is under no obligation to pursue meritless claims. *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995). In light of the judge making a reasonable determination well within his discretion, defense counsel had no affirmative duty to object to the judge's instructions or request that the jury be able to take notes. In reaching this conclusion, the undersigned notes that Judge Vinson's instruction regarding note taking came during the preliminary jury instructions, and nothing in the record suggests the jurors were confused or that any juror raised the issue to the court. Defendant offers no support for the bare claim that he was prejudiced. Therefore, the defendant's fifth ground must fail.

*Counsel's Failure to Object to the Improper Acts of the Prosecution*

The court utilizes a two part test in reviewing claims of prosecutorial misconduct: "(1)[W]hether the challenged comments were improper, and (2) if so, whether they prejudicially affected the substantial rights of the defendant." *United*

States v. Arias-Izquierdo, 449 F.3d 1168, 1177 (11th Cir. 2006) (*citing* United *States v. Castro,* 89 F.3d 1443, 1450 (11th Cir. 1996)). A defendant's rights are substantially prejudiced "when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006) (*citing United States v. Wilson*, 149 F.3d 1298, 1301 (11th Cir. 1998); *accord United States v. Frazier*, 387 F.3d 1244, 1268 n.20 (*quoting Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946) ("Errors do affect a substantial right of a party if they have a 'substantial influence' on the outcome of a case or leave 'grave doubt' as to whether they affected the outcome of the case.")); *United States v. Gabay*, 923 F.2d 1536, 1541 (11th Cir. 1991) ("To warrant a new trial, an improper prosecutorial comment must be so pronounced as to permeate the entire atmosphere of the trial and not be cured by an instruction by the district judge."). Even if the prosecution errs, the error must not be viewed in an isolated vacuum, but in light of the entire evidence of one's guilt presented at trial. *See United States v. Adams*, 74 F.3d 1093, 1097-98 (11th Cir. 1996) ("[B]ecause the record contains sufficient independent evidence of establishing guilt, we conclude that the improper references to statements made by [third party non-witness] do not raise a reasonable probability that, but for the remarks, the outcome would be different.").

Defendant claims that the government prosecutor improperly characterized the law, improperly described a witness, and vouched for government witnesses. "When reviewing a defendant's 'vouching' claim, we examine whether (1) the prosecutor placed the prestige of the government behind the witness by making explicit personal assurances of the witness's credibility, or (2) the prosecutor implicitly vouched for the

witness's credibility by implying that evidence not formally presented to the jury supports the witness's testimony." *Arias-Izquierdo*, 449 F.3d at 1177-78 (*citing United States v. Cano,* 289 F.3d 1354, 1365 (11th Cir.2002); *Castro*, 89 F.3d at 1457). The prohibition on vouching is not a blanket bar; instead the law aims to limit the prosecution from using the authority of the government or non-introduced evidence to add credibility to a witnesses's testimony. *See United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991) ("The prohibition against vouching does not forbid prosecutors from arguing credibility, which may be central to the case; rather, it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury.").

Defendant takes issue with Mr. Knight's opening statement, and the defense counsel's omission in not objecting to various portions of it. "An opening statement gives counsel the opportunity to state what evidence will be presented in order to make it easier for the jurors to understand what is to follow, and is not an occasion for argument." *United States v. Clarke*, 159 F. App'x 128, 132 (11th Cir. 2005) (*citing United States v. Zielie,* 734 F.2d 1447, 1455 (11th Cir.1984), *abrogated on other grounds by United States v. Chestang,* 849 F.2d 528, 531 (11th Cir. 1988)). Prior to the parties' opening statements, Judge Vinson instructed the jury:

> Now, at this time I'm going to recognize the attorneys in turn for purposes of making an opening statement. Remember that anything the attorneys say to you at this time or any time of this trial should not be considered by you as evidence, but I want you to think about this trial as much like the pieces in a jigsaw puzzle.

(Doc. 159, pp. 19-20). Notably, Judge Vinson repeatedly instructed the jury that what the attorneys say is not evidence. (Doc. 159, p. 16; Doc. 161, pp. 176, 213).

The defendant claims that Mr. Knight, in his opening remarks, improperly

instructed the jury about the elements of a conspiracy charge. In his opening statement, Mr. Knight generalized about the elements of a conspiracy charge, "[A conspiracy] is an agreement or understanding that you have to do something unlawful." (Doc. 158, p. 22).[3] Mr. Knight made similar references to a conspiracy being an agreement to do something unlawful throughout his opening statement. (Doc. 158, p. 21-22). Importantly, before Mr. Knight made these statements, he told the jury that the judge was going to tell them what the law was regarding conspiracy. (Doc. 158, pp. 21-22). Mr. Knight further illustrated the concept of possession through a hypothetical involving car ownership. (Doc. 158, p. 30). Mr. Knight used this hypothetical in an attempt to simplify the concept of possession of drugs not physically held by someone, into a less difficult one, leaving one's car parked in a parking lot.

The defendant must satisfy both prongs of *Strickland* to carry his burden in this collateral attack. *See Strickland*, 466 U.S. at 697 ("A court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed."). Here, the court need not address counsel's alleged deficient performance, because no prejudice is apparent. The judge instructed the jury prior to the parties' opening statements about the evidentiary value of attorney statements. (Doc. 159, pp. 19-20). Additionally, Mr. Knight's description of a conspiracy was

---

[3] "The elements of the offense of conspiracy are: (1) an agreement between the defendant and one or more persons, (2) the object of which is to do either an unlawful act or a lawful act by unlawful means." *United States v. Moore*, 525 F.3d 1033, 1039-40 (11th Cir. 2008) (*citing United States v. Arias–Izquierdo,* 449 F.3d 1168, 1182 (11th Cir. 2006) (citation omitted).

consistent with the judge's own instructions regarding a conspiracy. (Doc. 158, pp. 18, 20).[4]  Finally, the car hypothetical served only to allow the jury to think of possession in a more relatable manner.  The analogy did not affect the proof of defendant's guilt.  Where the prosecutor's behavior was not inappropriate, defense counsel would not have erred by failing to object to such behavior.

Defendant next claims misconduct because the prosecution stated in  opening statement,  "[Amber Girard] [is] charged with the defendants."  (Doc. 189, p. 15).  According to the defendant, this was a false statement because Amber Girard  was not charged or tried with the defendants.  (Doc. 189, p. 15).  This contention is plainly contradicted by the record.  In its opening statement, the prosecution stated:

> As I indicated to you, a woman by the name of Amber Girard is going to testify. She charged [sic] with the defendants. You recall when the judge was asking you about plea bargain and the whole process of plea bargaining, well, Amber Girard has been charged in this case with these three men. She's pled guilty, she's awaiting sentencing.

(Doc. 159, p. 32).  The indictment clearly shows that Amber Girard was in fact charged with the defendants on counts I and II.  (Doc. 25, pp. 1-2, 7).  Since the allegation of falsehood is flatly contradicted by the record, it too must fail.

Defendant claims that neither he, nor defense counsel, knew that Girard was going to testify. (Doc. 189, p. 15).  Defendant also argues that defense counsel never attempted to diminish Girard's credibility before the jury by discussing her plea deal with the government.  (Doc. 189, p. 15).  Logic would suggest that defense counsel

---

[4]  Judge Vinson described a conspiracy to the jury as: "Under the law, conspiracy is a combination or an agreement of two or more persons to join together to accomplish some unlawful purpose. It's a kind of partnership in criminal purposes, willful participation in such a scheme or agreement that's sufficient to complete the offense of conspiracy even though the ultimate object of the conspiracy may not be carried out or accomplished."  (Doc. 159, p. 18).

knew that Girard would be a crucial witness in the case. She was a coconspirator who had agreed to a plea arrangement with the government dependant on her cooperation. Defense counsel himself made no allegations of being caught off guard with regard to Girard's testimony, (doc. 195-1), and was prepared to cross examine her at trial. (Doc. 160, p. 76-81).

Additionally, defense counsel discussed Girard's credibility and plea agreement in his opening statement. (Doc. 159, p. 37-38). Ms. Girard underwent cross-examination regarding her plea agreement by another defense attorney just before the defendant's own counsel cross-examined Ms. Girard. (Doc. 160, pp. 75-81). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "The court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* Here, defense counsel acted reasonably in light of all the circumstances. Defense counsel cross-examined Girard on her drug habits. (Doc. 160, pp. 77-80). Counsel further mentioned Girard's drug usage and plea agreement with the government in his opening statement and the impact that these issues could have on her credibility. (Doc. 159, p. 37-38). Additionally, counsel for a codefendant had already cross-examined Girard on her plea agreement and cooperation with the government before defendant's counsel began his cross examination, (doc. 160, pp. 72-77), leading to a reasonable inference that further questioning on that topic would likely be repetitive and fruitless. Bolstering this inference is the defendant's omission of any claim that codefendants' counsel were ineffective in their cross-examination of Girard. In all,

counsel's conduct with regards to Girard is neither deficient nor prejudicial in light of the circumstances of the trial, and therefore these allegations cannot succeed. *See Strickland*, 466 U.S. at 697.

In the next series of claims under ground six, defendant suggests improper vouching for various pieces of evidence in the government's opening statements. Defendant points to an instance in the record where he says defense counsel failed to object or raise a defense when the prosecution stated, "[the physical evidence collected] will corroborate exactly what those witnesses tell you about the conspiracy that existed . . . ." (Doc. 159, p. 33).  The defendant contends that this was improper vouching on Mr. Knight's part.  (Doc. 189, p. 14).  The opening statement gives the parties the opportunity to state what evidence will be presented to the jury. *Clarke*, 159 F. App'x at 132.  Here, the various drugs, documents, and money that had been seized were all evidence  presented to the jury to prove elements of the charges.  A claim that evidence will be corroborated is not vouching. Moreover, the prosecution did not seek to place the prestige of the U.S.  Attorney's office or U.S. government behind the evidence. *See Arias-Izquierdo*, 449 F.3d at 1177-78; *Hernandez*, 921 F.2d at 1573.  In short, since the prosecution's opening remarks were not inappropriate, it was not deficient for defense counsel to object to them.

Defendant takes issue with several other evidence-related quotes in the government's opening statement.  At one point the prosecutor said:

> The drugs that were seized later in Apartment Number 22, you'll learn that they were in a shoe box underneath the bed. There was a second shoe box that contained a large number of cash and then there was shoe boxes underneath his bathroom sink which contained cocaine, methamphetamine. There was two large bricks of cocaine and another red container in his closet.

(Doc. 159, pp. 30-31). Defendant claims that this statement was improper vouching, not allowed within an opening statement, and that the government itself was testifying in its own opening statement. The above statement clearly references testimony that the government expected to put forward through a prosecution witness. Importantly, the government did call a witness who testified to the above details. (Doc. 160, pp. 137-48). As such, it was appropriate for inclusion in an opening statement. *See Clarke*, 159 F. App'x at 132. Furthermore, defendant's contentions regarding the government improperly vouching for the evidence are completely misplaced. The government did not vouch for the evidence or the credibility of the witness who would confirm the existence and utility of that evidence; instead the government merely explained what it would present to the jury. *See Arias-Izquierdo*, 449 F.3d at 1177-78; *Hernandez*, 921 F.2d at 1573.

Defendant also finds fault with two other instances from the government's opening statement. (Doc. 189, p. 17). Defendant finds fault with the prosecutor's statements that "[t]he evidence in this case is going to also show that the defendants, aside from the agreement that they had to commit this unlawful act . . . ," and, "I'm going to give you a preview what the evidence is that the Government collected that will substantiate or demonstrate the truth of these [indicted] charges." (Doc. 159, p. 22). These statements are not improper vouching. The contested statements show neither of the two requisites of improper vouching. *See Arias-Izquierdo*, 449 F.3d at 1177-78; *Hernandez*, 921 F.2d at 1573. Again, the prosecutor merely laid out a roadmap for the jurors to follow and described what the government expected the jury would gleam from the evidence presented in the government's case-in-chief.

Because the portions of the opening statement contested above were not

improper, defense counsel was under no obligation to object, and therefore defendant is unable to establish the requisite deficiency or prejudice required to meet the burden under *Strickland*. 466 U.S. at 697; *see also Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (holding that "[c]ounsel was not ineffective for failing to raise these issues because they clearly lack merit"); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) ("[C]ounsel need not pursue constitutional claims which he reasonably believes to be of questionable merit."). As a result, these allegations also must be dismissed.

Defendant continues under ground six by claiming that prosecutors ran "amuck" by making improper suggestions to the jury. He further faults defense counsel for not objecting to the prosecution's publishing of evidence to the jury, and the prosecution's improper "coaching" of government witnesses. (Doc. 189, p. 14). Missing, however, are any specifics regarding this claim. These are conclusory assertions unsupported by contentions from the record or instances from the case. As stated herein, "'[c]onclusory allegations of ineffective assistance are insufficient.'" *Wilson*, 962 F.2d at 998 (quoting *Lawson*, 947 F.2d at 853). Therefore, these conclusory allegations must fail.[5]

Finally, under this ground, defendant turns his attention to the government's closing statement. "The sole purpose of closing argument is to assist the jury in analyzing the evidence." *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir.

---

[5] Defendant also posits that the government improperly vouched for other items throughout the trial, and "'mislead' the jury and [acted] 'improperly' and 'without authority,'" (Doc. 189, p. 17). The defendant, however, does not point to specific instances of the claimed wrongdoing. Since such accusations are unsupported, vague, and mirror many of the claims already dealt with, they will not be more directly addressed.

1997) (*citing United States v. Iglesias,* 915 F.2d 1524, 1529 (11th Cir. 1990). A prosecutor may state conclusions that can be inferred from the evidence introduced at trial. *Id.* (*citing United States v. Johns,* 734 F.2d 657, 663 (11th Cir.1984)). "For a claim of prosecutorial misconduct relating to the closing argument to be successful, the 'argument must be improper and prejudicial to a substantial right of the defendant.'" *Id. (quoting Iglesias,* 915 F.2d at 1529). Frankly, the undersigned is unable to make sense of defendant's assertions in the final portion of his ground six claim. Defendant alleges that the prosecutor attempted to improperly instruct the jury as to the elements of a conspiracy charge and that defense counsel should have objected to such behavior. (Doc. 189, p. 17). Defendant also claims that the prosecutor frequently stated that the defendant was charged for possession of marijuana, when the defendant was not. (Doc. 189, p. 17). Perhaps such charges, supported by the record, might be cognizable claims. Here, though, defendant proceeds to affirm his allegations by citing to portions of the record wholly devoid of any discussion of the alleged wrongdoing. Specifically, defendant cites to lines 3-7 from page 180 of the direct examination of Officer William Jerard:

> [Officer Jerard]: Yes, sir, it is.
> [Knight]: And did you physically observe the gold Concord?
> [Officer Jerard]: I did.
> [Knight]: All right. And what are you doing when you're there?
> You're in a marked car, uniform, you're walking around?

(Doc. 159, p. 180). This passage clearly has nothing to do with the alleged offenses. The undersigned, however, believes defendant may have copied the wrong pages into his section 2255 petition, and instead meant to reference page 180 of a different day of the trial, namely lines 3 through 7 of document 161:

> [By Mr. Knight]: I want to talk about the charges now. Count one

> charges a conspiracy, and I explained to you in the opening statement that a conspiracy is nothing more than an agreement, an agreement between two or more persons to do something, in this case, to do something unlawful, that is, to possess with the intent to distribute cocaine and marijuana.

(Doc. 161, p. 180).

Assuming defendant relies on this passage, relief will not be forthcoming. True, this defendant was not charged with possession of marijuana. (Doc. 25). Mr. Knight's remark, however, was promptly objected to at trial by counsel for a codefendant. (Doc. 161, p. 180). In fact, Mr. Knight thanked the codefendant's counsel for correcting him, and put the evidence of marijuana into context, "[T]hese defendants aren't on trial for the marijuana that was introduced in this case. The government introduced marijuana . . . to demonstrate the intent that the defendants in this case had to distribute, and [the defendants] are charged with that intent to distribute methamphetamine and cocaine." (Doc. 160, p. 180). Regarding Mr. Knight's statement about the conspiracy charge, Judge Vinson again reminded the jury that what the attorneys say is not evidence, (doc. 161, p. 213), and then proceeded to give the jury the appropriate instructions regarding conspiracy. (Doc. 161, p. 221).

The full record shows that despite defendant's contentions, no demonstrable prejudice appears. The prosecutor promptly corrected himself upon being notified that he misspoke, and the prosecutor's explanation of what a conspiracy entails closely mirrors the description of a conspiracy as described by the court. *See supra* note 3; (Doc. 161, p. 221). Furthermore, the judge again instructed the jury that what the attorneys say is not evidence and then proceeded to give the jury the proper instructions on the proper charges. As such, the defendant fails to show that any

prejudice resulted from the referenced statements and the supposed failure of counsel to object or raise the appropriate defenses. *See Strickland,* 466 U.S. at 687. Accordingly, this final contention under ground six must also fail.

*Counsel's Failure to Challenge the Indictment or Verdict As Being Fatally Defective*

Under ground seven, defendant alleges that defense counsel provided ineffective assistance of counsel when he failed to challenge the indictment or verdict as fatally defective. (Doc. 189, p. 19). The first part of this ground alleges that the indictment failed to set forth the felony offense of aiding and abetting, prohibited by 18 U.S.C. § 2. Such an offense is defined as follows, "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a). The indictment, however, reflects the opposite of what defendant alleges. The indictment under count two, clearly states that the defendant is being charged under "Title 18, United States Code, Section 2." (Doc. 25, p. 2). Thus, a reading of the indictment would make the defendant aware of the charge of aiding and abetting. Additionally, defendant also contends that he was never convicted of aiding and abetting in the final judgment. (Doc. 189, p. 19). "[18 U.S.C. § 2] does not represent a distinct offense, but rather simply codifies an alternate theory of liability inherent 'in every count, whether explicit or implicit, and the rule is well-established, both in this circuit and others, that one who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense.'" *United States v. Hassoun*, 476 F.3d 1181, 1184, n. 2 (11th Cir. 2007) *(quoting United States v. Bullock,* 451 F.2d 884, 888 (5th Cir.1971)). The statute merely describes those who may be guilty of a crime. The jury returned a guilty verdict for count two, finding

that defendant was guilty of the offense charged with regard to both methamphetamine and cocaine. (Doc. 86, p. 2). Defendant's allegation, therefore, lacks merit and must fail.

Defendant next asserts that counts two and four of the indictment are "multiplicious" [sic] and "duplicitous." (Doc. 189, p. 19). A review of the record reveals defendant's claims are mistaken, and flatly contradicted by both the indictment, (doc. 25), and judgment. (Doc. 123). Count two charged the defendant under 21 U.S.C. §§ 841(a)(1), (b)(1)(c), and 2, for offenses that concluded by November 4, 2007. (Doc. 25, p. 2). Count four charged the defendant under 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), and (b)(1)(B)(viii), for offenses that concluded by November 5, 2007. (Doc. 25, pp. 3-4). The government indicted and convicted the defendant of two distinct sets of charges that each occurred on two distinct dates. Defendant also claims that counts two and four are duplicative of count one because they charge the same statutory offense. (Doc. 189, p. 19). "It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." *Pinkerton v. United States*, 328 U.S. 640 (1946). Count one, therefore, is a separate and distinct charge and not duplicative of counts two and four.

Defendant also contends that the verdict form allowed double counting of the drug amounts he was convicted of, and failed to give the jury the option of finding the defendant guilty of a lesser drug amount. (Doc. 189, p. 20). The defendant frames these allegations within the context of ineffective assistance by asserting that counsel should have objected to such deficiencies. "'Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's

punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines.'" *United States v. Matos-Rodriguez*, 188 F.3d 1300, 1309 (11th Cir. 1999) (*quoting United States v. Alexander*, 48 F.3d 1477, 1492 (9th Cir. 1995) (citation and internal quotation marks omitted)).  The contention of double counting lacks merit.  First, review of the Pre-Sentencing Report confirms that such double counting did not occur.  (PSR ¶¶ 29-37).  These Pre-Sentencing Report sections detail at great length the process used to arrive at the drug amounts utilized for sentencing.  Further, in the Pre-Sentencing Report calculations, the United States Probation Office is cognizant of the possibility of double counting, and makes intentional efforts to avoid it.  (PSR ¶ 34).  Finally, defendant fails to identify any specific instance of double counting or any  additional evidence to bolster the contention.

Defendant also claims that the verdict form was defective because it prohibited the jury from finding him "guilty or innocent" for "his specific role" in the charged crimes.  (Doc. 189, pp. 19-20).  The verdict contradicts the defendant's contention. (Doc. 86).  The verdict form allowed the jurors to find defendant individually guilty or not guilty with respect to each count, and also provided the jurors the ability to assess the individual weights of the substances that defendant would be convicted of. (Doc. 86).  On count one, the jurors were able to choose between four gradations for both cocaine and methamphetamine.  (Doc. 86, p. 1).  For count two, the jurors were able to choose whether the alleged mixture or substance contained either cocaine or methamphetamine.  (Doc. 86, p. 2).  Finally, for count four, the jurors could again choose between four graduated amounts for methamphetamine and three gradations for cocaine.  (Doc. 86, p. 2).

In all, defendant's claims under ground seven are either contradicted by the record, unsupported by sufficient evidence, or depend upon a misreading of the applicable law. Defendant contends throughout ground seven that his counsel repeatedly erred by not objecting to these various deficiencies and therefore provided ineffective assistance. "The reasonableness of a counsel's performance is an objective inquiry." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). Thus, in evaluating counsel's strategic decisions, the reviewing court considers "whether there was any reasonable justification for the attorney's conduct." *See Newland v. Hall*, 527 F.3d 1162, 1184 (11th Cir. 2008). "Because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315. As established above, the deficiencies claimed are either not apparent to this court, or are contradicted by the record in the case, and therefore, objectively, it was reasonable for counsel to make no objection to them. *See United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (applying *Strickland* and holding that "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"); *Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").

Consequently, defendant cannot show deficient performance on the part of his counsel, nor can he show the needed prejudice that resulted from such a deficiency. *See Strickland*, 466 U.S. at 687. Therefore, defendant's seventh ground must be dismissed.

*Counsel's Failure to Investigate Evidence or Question Witnesses*

Defendant's eighth ground alleges that defense counsel failed to question the prosecution's witnesses prior to trial or develop a meaningful defense at trial. (Doc. 189, p. 22). As to these claims in particular, it is important to note that counsel's performance must fall below the objective standard that holds no other reasonable attorney would have acted in the way that counsel represented the client. *See Chandler,* 218 F.3d at 1315 ("Because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th. Cir. 2007) (*quoting Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland*, 466 U.S. at 686.

Here, defendant first alleges that he was not on notice of any cooperation or plea agreements between the government and Shannon Reed, Amber Girard, or Diamond Ashley Knuth. (Doc. 189, p. 22). Defendant's claim is once again contradicted by the record. First, Reed was cross-examined by defense counsel regarding any agreements with the government. (Doc. 161, pp. 64-65). Reed was also asked by the prosecutor about her agreement with the government. (Doc. 161, pp. 46-47). Next, Girard's agreement was mentioned by defense counsel in his opening statement, (Doc. 159, p. 37), and she was crossed on her agreement by

codefendant's counsel. (Doc. 160, pp. 75-76). Girard's plea agreement was also moved into evidence. (Doc. 160, p. 118). Finally, Knuth was cross-examined regarding any assistance she might receive for her testimony by codefendant's counsel. (Doc. 160, p. 285).

Defendant also posits that his counsel failed to move for a *James*[6] hearing, but the only grounds defendant mentions are that such a hearing could be used to prevent "'non-co-conspirators'" [sic] from testifying to "impermissible hearsay." (Doc. 189, p. 22). The specific reference defendant makes to such impermissible hearsay is Knuth's entire trial testimony. (Doc. 189, p. 22). Upon review of Knuth's trial testimony, unassisted by any specificity offered by defendant, the undersigned cannot identify any instances of impermissible hearsay. Contrary to defendant's contentions, Knuth's testimony was primarily concerned with her own actions and observations. (Doc. 160, pp. 275-301). These bare, conclusory allegations do not amount to an actionable cause of action under a § 2255 motion. *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992). In a passing reference, defendant asserts that Knuth had no relationship with the defendant. (Doc. 189, p. 23). Once again, the record contradicts this claim. Knuth testified that she had received cocaine from the defendant and that she knew him "somewhat." (Doc. 160, pp. 282-83). This claim, like so many of his assertions, simply takes issue with the evidence presented against him and his coconspirators.

---

[6] A *James* hearing is "a hearing to determine the admissibility of certain extrajudicial declarations that the prosecution intended to introduce under the coconspirator rule . . . . The purpose of the James hearing is to establish the existence, or nonexistence, of the predicates for the admission of a coconspirator's extrajudicial declaration before the declaration is made known to the jury." *United States v. Grassi*, 616 F.2d 1295, 1300 (5th Cir. 1980).

The remaining contentions under claim eight lack specifics and are conclusory. For the remaining claims, defendant cannot demonstrate that counsel's behavior was "'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d at 1099 (*quoting Adams*, 709 F.2d at 1445). Defendant's claim that counsel failed to cross-examine witnesses on key subjects, collapses when viewed in the context of the entire record. Often, counsel omitted certain areas from cross-examination because codefendant's counsel had previously questioned the witness on the subject. Further, defendant makes no claim that codefendants' counsel's cross-examination of witnesses was not thorough or effective. In the context of the entire record, defense counsel's actions were reasonable, and no demonstrable prejudice is apparent. Accordingly, ground eight must fail.

*Counsel's Failure to Object to Alleged Prejudicial Evidence Admitted at Trial*

Defendants ninth, and final ground, claims that counsel failed to object to certain foundational and custody issues surrounding the motel safe key and "slug." (Doc. 189, p. 24). The record provides adequate assurance that no such foundational or chain of custody issue appears. The key was admitted into evidence without objection by any defense counsel. (Doc. 159, p. 200). Furthermore, the record confirms the chain of custody. Initially, law enforcement officials noticed a codefendant's car in the Wingate Inn's parking lot. (Doc. 159, p. 104). Subsequently, after a period of surveillance, a G.P.S. tracking device was placed on the car. (Doc. 159, p. 104). Following the placement of the G.P.S. device, the codefendant's car was moved to 200 White Street, Niceville, Florida. (Doc. 159, p. 118). Soon after, the codefendant's car was taken into police possession and searched

under a warrant. (Doc. 159, pp. 197-200). During this search a key was seized by Florida Department of Law Enforcement Special Agent Howard Michael Bettis. (Doc. 159, pp. 199-200). Following this seizure, Bettis transferred the key to Drug Enforcement Agency Task Force Agent Corey A. Aittama. (Doc. 160, p. 8). Aittama went to the Wingate Inn, met with the motel manager, and inserted the key from the codefendant's car into the slug[7] from the safe in Room 237, one of the two rooms used to facilitate the crimes here. (Doc. 160, pp. 8-9). Aittama and the motel manager then proceeded to go into room 237, install the slug into the safe, and use the key from the codefendant's car to operate the lock in the safe. (Doc. 160, p. 9). As a result, the safe was opened and significant amounts of cocaine, marijuana, and methamphetamine were recovered from inside the safe. (PSR ¶ 25). No chain of custody or foundational issue existed. With no plausible issue present, counsel had no obligation to pursue a futile claim. *See Brownlee,* 306 F.3d at 1066. Consequently, defendant's ninth ground must also be dismissed.

Pursuant to 28 U.S.C. § 2255(b), this court must conduct an evidentiary hearing upon defendant's motion to vacate sentence, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." In support of such motion, however, defendant must proffer credible and specific evidence entitling him to relief. *See Drew v. Dep't of Corr.*, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual

---

[7] A slug is the device in a safe in which a key is inserted to unlock the safe. Review of the transcript leads the undersigned to conclude that a slug is another term for the safe's lock. (Doc. 159, p. 166).

proffer or evidentiary support"); *Hill v. Moore*, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."). Here, defendant's claims are procedurally defaulted, without merit, or otherwise refuted by the record. This court may therefore deny the requested relief without an evidentiary hearing. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is *not* entitled to an evidentiary hearing . . . when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible.") (quotation marks omitted); *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983) ("An evidentiary hearing is not required where, as here, the district court can determine the merits of the ineffectiveness claim based on the existing record.").

Accordingly, it is respectfully RECOMMENDED:

That the motion to vacate, set aside, or correct sentence (doc. 189) pursuant to 28 U.S.C. § 2255 be DENIED.

At Pensacola, Florida, this 27th day of November, 2012.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).